UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT ALDRICH,                    )
          Plaintiff                )
                                   )
v.                                 )
                                   )        C.A. No. 13-10466-DPW
JUDGE WILLIAM G. YOUNG,            )
          Defendant.               )

MEMORANDUM AND ORDER
July 18, 2013

WOODLOCK, D.J.

## I.    Introduction

On or about January 10, 2013, plaintiff Robert Aldrich
("Aldrich") filed a civil suit against U.S. District Judge
William G. Young, in the Suffolk Superior Court.  *See Aldrich v.
Young*, Civil Action No. 13-00338.

On March 1, 2013, Assistant United States Attorney George B.
Henderson, II ("Henderson"), on behalf of both Judge Young and
Carmen M. Ortiz, the United States Attorney for the District of
Massachusetts, filed a Notice of Removal pursuant to 28 U.S.C.
§ 1442(a)(1)(providing for, *inter alia*, removal of a civil action
commenced in state court against any officer of the United States
sued in an official or individual capacity for any act under
color of such office).  The Notice of Removal was made on the
grounds that Aldrich had complained of actions taken in the
context of civil litigation that had been pending before Judge
Young under color of his office or in the performance of his
duties.

Aldrich's state complaint alleged that Judge Young wrongfully denied his motions in connection with three federal lawsuits and denied him due process and equal protection.  He asserted claims under, *inter alia*, 42 U.S.C. § 1983 and 1985(2). He alleged mal-administration of justice, violation of statutory duties, interference with his federal and state constitutional rights to access the courts, systemic racial discrimination, unequal treatment, and discrimination against him as a *pro se* plaintiff.  He sought compensatory and punitive monetary damages, as well as declaratory and injunctive relief.  He also requested that this Court refer his complaint to the Commission on Judicial Misconduct.

More specifically, in the first case, *Aldrich v. Breen, et al.*, Civil Action No. 09-10352-WGY, Aldrich made a claim of racial profiling in connection with a motor vehicle stop by police.  In the instant suit, he makes a bald allegation that Judge Young – or someone from his office – alerted the defendant Milton Police Officer of his claims prior to service of process, allowing the Officer time to file a petition for bankruptcy to avoid attachment if liability was determined.  He further claims Judge Young arbitrarily denied his complaint, creating one hurdle after another for Aldrich to impede access to the courts.[1]

---

[1]The docket reflects that Judge Young directed Aldrich to demonstrate good cause why all claims except as to two police officers should not be dismissed or file an amended complaint

Second, Aldrich filed a federal habeas corpus petition seeking post-conviction relief based on alleged threats and intimidation by police, which actions he claimed had interfered with his right to access the courts. *Aldrich v. MacEachern*, Civil Action No. 11-10687-WGY.  Aldrich contends Judge Young denied more than 20 motions without requiring an opposition from the Government.  He also contends that Judge Young assumed the role of prosecutor, and ultimately dismissed the petition without notice to him.  On August 2, 2012, Judge Young dismissed the petition without prejudice.  Aldrich's appeal is pending.  *See* *Aldrich v. MacEachern*, No. 12-2085 (1st Cir. 2012) and No. 13-1197 (1st Cir. 2013).

Thereafter, nine (9) days after Aldrich's Motion to Reconsider dismissal of the first civil action was denied, he filed a third civil action that was identical to the amended complaint attempted to be filed in *Aldrich v. Breen, et al.*, Civil Action No. 09-10352-WGY.  The case initially was assigned

---

curing the deficiencies.  *See* Memorandum and Order (Docket No. 5).  Aldrich requested, and was granted two extensions for compliance.  He failed to file either a show cause response or amended complaint as directed, and Judge Young dismissed the action without prejudice.  Thereafter, Aldrich filed an amended complaint along with various other motions, including a Motion for Reconsideration of the dismissal.  Judge Young denied relief, and denied reconsideration not on the basis of untimeliness, but because the proposed amended complaint failed to state a cause of action.  In response, Aldrich re-filed suit.  *See* Civil Action No. 09-11282-WGY, discussed, *infra*.

to Judge Tauro but later assigned to Judge Young.[2]  *See Aldrich v Town of Milton*, *et al.*, Civil Action No. 09-11282-WGY.  Aldrich claims that the reassignment was done without explanation; however, the docket reflects that the transfer to Judge Young was made pursuant to Local Rule 40.1(I)(Reassignment and Transfer of Cases).[3]  Interestingly, at the time Aldrich filed the instant action in state court in January, 2013, the third action had already been set for trial before Judge Young for February 12, 2013.  Aldrich had filed several motions seeking to avoid trial, such as a Motion for the Case to Return for Mediation (Docket No. 294), and a Motion to Modify Scheduling Order and Continue Trial to April, 2013.  Those motion were denied on January 10, 2013.  About two weeks later, on January 25, 2013, Aldrich filed an Opposition to Recusal of Judge Tauro (Docket No. 295) objecting

---

[2]After a jury trial, on March 15, 2013, the jury returned a verdict in favor of all defendants (Michael Breen, Lawrence Lundrigan, and Kevin Doogan).  The case is pending appeal.  *See Aldrich v. Town of Milton, et al.*, No. 13-1436 (1st Cir. 2013).

[3]Local Rule 40.1(I) provides: "In the interest of justice or to further the efficient performance of the business of the court, a judge may return a case to the clerk for reassignment, whether or not the case is related to any other case, with the approval of the Chief Judge, or, with respect to civil cases only, may transfer the case to another judge, if the other judge consents to the transfer."  *Id.*  Since the complaint in the third action was identical to the amended complaint in the first action, it is beyond question that the action was reassigned as related to the prior lawsuit.

to trial before Judge Young.[4]

Again, Aldrich asserts that Judge Young systematically denied his motions without allowing the defendants an opportunity to file oppositions.  He contends that Judge Young's actions, though made under the guise of judicial authority, were motivated by his pro law enforcement partiality, racial animus towards minorities, and bias against *pro se* litigants.  Aldrich contests the fact that Judge Young presided over his habeas petition while contemporaneously presiding over his civil rights action, and further, that Judge Young refused to recuse himself on that basis.

On March 21, 2013, Henderson filed, on Judge Young's behalf, a Motion to Dismiss (Docket No. 4) with a Memorandum in Support (Docket No. 5).  After being granted an extension of time to respond, Aldrich filed several pleadings, including: (1) a Motion for Leave to Amend the Complaint to remove several legal causes of action (Docket No. 9); (2) a Motion to Disqualify and Discharge Assistant United States Attorney Henderson from Representing Defendant (Docket No. 10); (3) an Objection and Motion to Strike Motion to Dismiss for failure to comply with

---

[4]A reasonable inference could be drawn, based on the timing of the trial and denial of the motion for a continuance immediately prior to Aldrich's filing of a complaint in state court, that Aldrich was posturing and filing suit in order to thwart the trial scheduled to take place before Judge Young; however, I will not resolve the issues raised in this case on that basis.

rules of civil procedure (Docket No. 11); and (4) an Opposition and Partial Assent to the Motion to Dismiss (Docket No. 12).

On May 24, 2013, Henderson filed a Memorandum in Opposition to the Motion to Disqualify (Docket No. 15) and a Memorandum in Opposition to the Motion to Strike the Motion to Dismiss (Docket No. 16). He also filed a Notice of Appearance (Docket No. 14).

On June 13, 2013, Aldrich filed a Motion for Disqualification of the Department of Justice ("DOJ")(Docket No. 17), a Motion for Hearing on the Motion for Disqualification (Docket No. 18), and a Motion to Stay Proceedings Pending Final Disposition on Whether or Not the DOJ is Disqualified From Representing Defendant (Docket No. 19).

On July 3, 2013, Aldrich filed a Motion Requesting to be Provided with Written Notice of All Electronic Filings as a Non ECF User (Docket No. 22). He seeks a Standing Order directing the clerk to be responsible for issuing a Notice of Electronic Filing, and send a paper copy of the notice to him.

On July 8, 2013, the defendant filed a sur-reply in opposition to Aldrich's Motion to Disqualify (Docket No. 24).

## II. Discussion

### A. The Motion to Amend Complaint To Remove Claims

Aldrich contends he is entitled to amend his complaint once as a matter of course, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, because the defendant has not filed an

"answer."  The defendant asserts that, while generally plaintiffs are granted leave to amend, any amendment would be futile in this case.

I do not agree with Aldrich that he is permitted to amend as a matter of right, because a Motion to Dismiss was filed and Aldrich failed to file an amended complaint within 21 days thereafter.  Rule 15(a)(1)(B) provides, *inter alia*, for amendment as of right within 21 days <u>after service of a motion under Rule 12(b)</u>,(e), or (f).  Fed. R. Civ. P. 15(a)(1)(B)(emphasis in underline added).[5]  Here, the Motion to Dismiss was filed on March 21, 2013.  Aldrich's Motion for Leave to Amend was filed May 21, 2013, well after the 21-day window.  While Aldrich <u>did</u> file, on April 11, 2013, a Motion to Extend Time to file an Opposition to the Defendant's Motion to Dismiss in order to research the relevant laws, he did <u>not</u> seek leave to extend the

---

[5]The Advisory Committee Notes to Rule 15(a) address the 2009 Amendments as they pertain to amendment of the complaint once as of right.  It noted that the provision terminating the right to amend after 21 days after service of a motion under Rule 12(b), (e), or (f) served to "force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion.  A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite the determination of issues that otherwise might be raised seriatim.  It also should advance other pretrial proceedings."  *Id.*  Next the Advisory Committee Notes state that "[j]ust as amendment was permitted by former Rule 15(a) in response to a motion, so the amended rule permits one amendment as a matter of course in response to a responsive pleading.  The right is subject to the same 21-day limit as the right to amend in response to a motion."  *Id.*

time to file an amended complaint within the body of that motion.[6]

Thus, I find that Aldrich may not amend his complaint unless I permit it pursuant to Fed. R. Civ. P. 15(a)(2).  Here, because the amendment of the complaint adds nothing new to the case other than to remove several of his claims for injunctive relief and monetary damages, and because this action will be dismissed for the reasons stated herein, any amendment of the complaint would be futile.  Therefore, I decline to permit Aldrich to amend his complaint, and will <u>DENY</u> his Motion to Amend (Docket No. 9).[7]

      B.   <u>Plaintiff's Motion to Disqualify and Discharge Defense Counsel; the Motion for Disqualification of the DOJ; the Motion for Hearing on the Motion for Disqualification, and the Motion to Stay Proceedings Pending Final Disposition on Whether or Not the DOJ is Disqualified From Representing Defendant</u>

Aldrich seeks to disqualify and discharge defense counsel on two grounds.  First, he claims that Henderson failed to file a separate "Notice of Appearance" with a notification of approval

---

[6]Interestingly, as noted in this Memorandum and Order, Aldrich has asserted technical arguments against the defendant based on strict application of rules of procedure and failure to comply with those rules.  While this fact does not serve as a basis for denying Aldrich's Motion for Leave to Amend, it nevertheless demonstrates Aldrich's familiarity with rules of procedure, or at least his ability to research the requirements of Rule 15(a).

[7]Aldrich's motive to amend the complaint solely to remove the claims for injunctive and monetary relief are unclear.  To the extent Aldrich is attempting to amend the complaint simply to avoid possible application of the three-strike rule of 28 U.S.C. § 1915(g), that is not a proper ground for amendment.

from United States Attorney Carmen Ortiz.  Second, he contends
that the DOJ has a conflict of interest under these
circumstances.

With respect to the Notice of Appearance issue, in his
opposition, Henderson concedes that he did not file a separate
Notice of Appearance, but contends that the Notice of Removal on
behalf of Judge Young leaves no potential for confusion about who
he is representing in this action.  Thus, he argues that any
technical omission by him was harmless, citing to *Wasserman v.
Rodacker*, 557 F.3d 635, 637-38 (D.C. Cir. 2009) in support.[8]

I agree.  Where there is no dispute by Aldrich that this
action was removable from state court because Judge Young was an
officer of the United States acting under color of office and
where there is no reasonable basis for Aldrich to dispute that
the Notice of Removal did not make it clear who Henderson was
representing, I find Aldrich's arguments to be unpersuasive.  I
further find the *Wasserman* reasoning to be sound and the case
sufficiently analogous in this respect.  Further, Aldrich has not

---

[8]In *Wasserman*, an action against a United States Park police
officer for the arrest of the plaintiff for walking his dogs
without a leash, the court rejected the arrestee's claim that
because the government attorneys did not file a formal notice of
appearance, there was no way of knowing whether they were
speaking for the defendant when the case was removed.  The court
found that the argument was "not a serious contention" where
there was no objection to the Notice of Removal, the Notice of
Removal was timely and properly stated the basis for removal, and
any confusion over the identity of counsel did not result in any
prejudice.  *Wasserman*, 537 F.3d at 638.

shown that he suffered any prejudice by the failure to file a Notice of Appearance, nor does he allege that it was unclear who represented Judge Young.  I therefore reject Aldrich's arguments and will not discharge or disqualify Henderson on this basis.

Next, with respect to Aldrich's argument that the DOJ has a conflict of interest, I find that his first Motion to Disqualify (Docket No. 10) failed to set forth any factual basis from which I could find any actual or apparent conflict of interest exists. In his supplemental Motion (Docket No. 17), Aldrich argues that the DOJ has a conflict of interest because there is currently a pending criminal case against him in state court, *Commonwealth v. Robert Aldrich*, Middlesex Sup. Ct. No. 2008-00164, and the DOJ has an "active interest" in this criminal matter (which he characterizes as "related") because one of the DOJ's agents/informants, Alan Mason, provided incriminating information against him that formed the underlying basis for Aldrich's conviction and current incarceration.  Motion for Disqualification of the DOJ (Docket No. 17 at 1, ¶ 1).

Additionally, Aldrich argues that since Judge Young presided over his § 2254 habeas petition regarding his criminal conviction, and the alleged wrongful actions in that § 2254 case formed the basis of this civil action, the DOJ's "inter-agency" relationship with the Massachusetts Attorney General's Office in opposing the habeas petition should "automatically" disqualify

the DOJ from representing Judge Young here.  *Id.* at ¶ 2.[9]

Further, Aldrich contends that under these unusual circumstances, he will be substantially prejudiced by the DOJ's representation of Judge Young in light of its dual role as prosecutor and civil defense counsel.[10]

Finally, Aldrich claims that he has recently completed the presentment requirements to proceed with a civil action against the United States, DOJ, and certain federal agents under, *inter alia*, the Federal Tort Claims Act, where he alleges that he will present evidence of government misconduct, thereby resulting in an "appearance of a conflict" in the DOJ's representation of Judge Young.

In its sur-reply, the defendant argues that Aldrich's habeas corpus petition made no mention of the testimony of Alan Mason, and no claim of error relating to the use of a government informant.  The defendant also contends that the related criminal matter to which Aldrich referred was prosecuted by the Commonwealth of Massachusetts and <u>not</u> by the United States.

---

[9]Aldrich cites to *Marshall v. Jerrico, Inc.,* 446 U.S. 238 (1980) as support for his claim that the role of prosecutor and defense counsel presents an inextricable conflict that runs afoul of the Separation of Powers Clause.  I do not find that this case, involving an employer suit challenging civil penalty provisions to the Fair Labor Standards Act, is relevant to the issues here.

[10]In support, Aldrich attaches, *inter alia*, copies of pleadings in connection with his state criminal case.

11

Moreover, the defendant contends that the United States was not a party to the habeas action, and that the Department of Justice did not participate in that action in any fashion.  Rather, the action was dismissed by Judge Young for failure to exhaust state remedies.

Next, the defendant argues that Aldrich has not alleged that Henderson had any involvement or role in any of the underlying proceedings forming the basis of this suit, nor has he set forth any particular benefit to Henderson or to the United States Attorney's Office that would enure to them from the outcome of this action.  Finally, defendant argues that Aldrich fails to identify any actual prejudice to him from the alleged conflict of interest, and, for these reasons, his claim of conflict of interest and prejudice has no merit.

As a general matter, "courts disfavor motions to disqualify." *See Eaves v. City of Worcester*, 2012 WL 6196012, *2 (D. Mass. Dec. 11, 2012)(Civil No. 12-10336-TSH)(citing, *inter alia, Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994)). In *Eaves*, Judge Hillman explained, in relevant part:

> Such motions must be considered in light of the principle that " 'court[s] should not lightly interrupt the relationship between lawyer and client,' " *Adrion v. Knight*, 2008 WL 5111084 (D.Mass. Dec.4, 2008) (quoting *Adoption of Erica*, 426 Mass. 55, 58, 686 N.E.2d 967 (1997)), and "[u]nless the underlying judicial process will be tainted by an attorney's conduct, courts should be reluctant to grant disqualification motions." *Gray v. R.I. Dep't. of Children, Youth and Families*, 937 F. Supp. 153, 156

12

(D.R.I.1996)....The movant bears the burden of proving a conflict.

*Eaves v. City of Worcester*, 2012 WL 6196012 at *2 (citations omitted).[11]  Vague and unsupported allegations of conflict of interest are not sufficient to meet the movant's burden.  *Cohen*, 844 F. Supp. at 1067.  *See Conley v. Chaffinch*, 431 F. Supp. 2d 494 (D. Del. 2006).  "The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except when necessary."  *Gray v. Rhode Island Dept. of Children, Youth and Families*, 937 F. Supp. 153, 161 (D.R.I. 1996).  Further, "motions to disqualify opposing counsel are disfavored ... not only because disqualification robs one's adversary of her counsel of choice, but also because of the risk ... that one could subvert the ethical rules in an attempt to use them as a procedural weapon."  *Wolf, Block, Schorr & Solis-Cohen LLP*, 2006 WL 680915, at *1 (E.D. Pa. 2006).

In this case, I do not find that Aldrich has set forth any *bona fide* basis to find that a real or apparent conflict of interest exists merely because the DOJ may have had some

---

[11]"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it."  *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980)(citations omitted). Disqualification is an "'extreme sanction' that should not be imposed lightly."  *Reg'l Emp'rs' Assurance Leagues Voluntary Emps.' Beneficiary Ass'n Trust v. Castellano*, 2009 WL 1911671, at *2 (E.D. Pa. 2009)(quoting *Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp.2d 518, 520 (E.D. Pa. 1999)).

involvement either with his state criminal case or with his habeas petition (a fact that defense counsel denies).[12]

First, Aldrich has not named Henderson as a defendant in this action, nor has he claimed the U.S. Attorneys Office violated his civil rights in connection with this action.

Second, the fact that Aldrich "anticipates" that he will file suit against the DOJ and other federal officials or agents for unspecified alleged misconduct, does not serve as a basis for disqualification in a pending suit. Indeed, Aldrich may not manipulate the judicial system simply by stating that he intends to file suit against those defendants in the future, in order to disqualify defense counsel in this suit. In other words, a litigant may not rely on possible future lawsuits in order to disqualify counsel in a present suit. At any rate, the issue of conflict of interest would arise, if at all, in the later-filed suit if the DOJ assigned counsel to represent those named federal defendants. It cannot serve as a basis for disqualification in this case.

Third, Henderson's role is solely that of an attorney representing a defendant in a civil suit. Neither the DOJ nor the United States Attorneys Office, nor Henderson for that

_____

[12]Aldrich's allegation of an "active interest" in his criminal case, and an inter-agency relationship with the Massachusetts Attorney General's Office are bald assertions; nevertheless, for purposes of this Memorandum and Order only, I will credit Aldrich's allegations as true.

14

matter, have any financial, personal, or political conflict of interest raised here.[13]

Fourth, the allegation that the DOJ and the United States Attorneys Office have an active interest in Aldrich's state criminal case has no bearing on the disqualification issue, where there is no evidence from the criminal case that is relevant to the legal issues raised in the Motion to Dismiss (*e.g.*, absolute judicial immunity).  Moreover, there are no confidences or communications involving the criminal case that would be relevant here.  The issues in this case can be resolved solely on the record before me.  In light of this, there is no objective basis for me to find that the circumstances of the criminal action would taint this litigation if Henderson were to continue his representation of Judge Young.  *See United States v. Zagami*, 374 Fed. Appx. 295, 297 (3d Cir. 2010)(finding as frivolous the argument that there was a conflict of interest requiring disqualification where the Assistant United States Attorney who handled the case had previously prosecuted the defendant in an unrelated matter).[14]  Moreover, the allegation that the DOJ and

---

[13]As discussed in more detail in this opinion, and as Aldrich concedes, his claim for monetary damages against Judge Young is not cognizable because it is barred by absolute judicial immunity.

[14]In *Keyter v. Bush*, 2004 WL 3591125, *3 (D.D.C. 2004), the *pro se* plaintiff brought a *Bivens* suit against President Bush for alleged reckless disregard of his statutory duties and other violations of law, arguing that he colluded with the Washington

United States Attorney's Office had an interest in his habeas

case also has no bearing on the facts and law in this case, for

the same reasons.

Finally, I do not find that Aldrich has shown he has been

prejudiced by any alleged conflict of interest, particularly

where it is clear, for the reasons set forth herein, that Aldrich

fails to set forth any plausible claims upon which relief may be

granted.  Even if no Motion to Dismiss had been filed by

Henderson, I nevertheless have authority to dismiss this action

*sua sponte*.[15]  Thus, even if I struck Henderson's appearance or

───────────────

state court system.  The United States Attorney filed a Motion to
Dismiss, and plaintiff moved to disqualify the United States
Attorney on the grounds that there was a conflict of interest
that precluded representation of President Bush.  The theory was
that the U.S. Attorney had a duty to prosecute the President for
alleged crimes, and thus could not also defend the President.
The Court found the plaintiff's claim to be wholly without merit,
noting that under 28 U.S.C. § 547(2), the United States Attorney
was acting within his statutory authority in representing the
President.  In *Palmer v. O'Connor*, 2013 WL 1326207, *1 (E. D.
Cal. Mar. 29, 2013), a *pro se* federal prisoner who filed a suit
under *Bivens*, sought to disqualify the Assistant United States
Attorney, as well as the entire United States Attorneys Office,
based on an alleged conflict of interest because plaintiff wrote
a letter to the United States Attorneys about a criminal
complaint against the DOJ and the Bureau of Prisons, to which he
never received a response.  The court denied the motion to
disqualify, finding the record devoid of facts showing that the
United States Attorney had any interest in the outcome of the
*Bivens* case, or that the assigned United States Attorney had a
conflict of interest.  The fact that he wrote a letter about a
criminal matter had no bearing to the relevance of the *Bivens*
action (a civil, not criminal action).

   [15]*See Bustos v. Chamberlain*, 2009 WL 2782238, *2 (D.S.C.
2009)(noting that the court has inherent authority "to ensure a

held that the DOJ is disqualified from representing Judge Young (which I do not find), and even if I disregarded all of Henderson's arguments, the outcome of this case would fair no better.

Accordingly, for the reasons set forth above, I will <u>DENY</u> Aldrich's Motion to Disqualify and Discharge Assistant United States Attorney From Representing Defendant (Docket No. 10) in its entirety.  I will also <u>DENY</u> the Motion for Disqualification of the DOJ (Docket No. 17), the Motion for Hearing (Docket No. 18), and the Motion to Stay Proceedings Pending Final Disposition (Docket No. 19).

   C.   <u>Plaintiff's Motion to Strike Motion to Dismiss For
        Failure to Comply With Rules of Procedure</u>

As noted above, Aldrich seeks to strike the Motion to Dismiss on the ground that the motion is defective in that it failed to set forth -- within the body of the motion itself --

---

plaintiff has standing, that subject matter jurisdiction exists, and that a case is not frivolous") *citing, inter alia*, *Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 307-308 (1989); *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995)(where a § 1915 screening was not applicable because a pro se party paid the filing fee, the Court still had inherent authority "wholly aside from any statutory warrant" to act *sua sponte*); and *Rolle v. Berkowitz*, 2004 WL 287678, *1 (S.D.N.Y. 2004)(*sua sponte* dismissal in fee-paying pro se case is warranted where the claims presented no arguably meritorious issue to consider).  *See also Gaffney v. State Farm Fire and Cas. Co.*, 294 Fed. Appx. 975, 977 (5th Cir. 2008)(unpublished decision stating: "[t]his court has on numerous occasions recognized the inherent authority of a district court to dismiss a complaint on its own motion for failure to state a claim.").

the basis for the request for dismissal under Rule 12(b)(6). Rather, the reasons were set forth only in the Memorandum in Support.

The argument is hyper-technical.  More importantly, the Motion to Dismiss expressly <u>incorporated by reference</u> the Memorandum in Support (Docket No. 7) by stating: "The grounds for this motion are set forth in the accompanying memorandum of law." Motion to Dismiss (Docket No. 4 at 1).  That memorandum did, in fact, address with specificity the basis for a Rule 12(b)(6) dismissal.  I deem the Memorandum in Support to constitute part of the motion itself, thus complying with the Federal Rules of Civil Procedure.  Further, I agree with the defendant that the presentation of the issues were in compliance with well-settled pleading practices pursuant to Local Rule 7.1(b)(1).[16]  Aldrich has not submitted any legal authority for the proposition that a supporting memorandum referenced in a motion to dismiss is insufficient to meet the rules.

Accordingly, Aldrich's Motion to Strike Motion to Dismiss For Failure to Comply With Rules of Procedure (Docket No. 11) will be <u>DENIED</u>.

---

[16]Local Rule 7.1(b)(1) provides for the submission of a Motion, and states: "(1) Submission of Motion.  A party filing a motion shall at the same time file a memorandum of reasons, including citation of supporting authorities, why the motion should be granted.  Affidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion."  L.R. 7.1(b)(1).

D.   <u>Defendant's Motion to Dismiss</u>

1.   <u>Claim For Monetary Damages</u>

The defendant's Motion to Dismiss is based on Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Memorandum in Support stated the basis for the motion, by arguing that Aldrich's action for monetary damages was barred by the doctrine of absolute judicial immunity.  Memorandum in Support (Docket No. 5 at 6), *citing Mireless v. Waco*, 502 U.S. 9, 11 (1991)(*per curiam*).  Defense counsel asserts that in *Mireless*, the U.S. Supreme Court has stated that "judicial immunity is an immunity from suit, not just from the ultimate assessment of damages." *Id.* (other citations omitted).  Here, defense counsel contends that the acts complained of all were taken in Judge Young's judicial capacity and were acts normally performed by a judge within the scope of his jurisdiction.  Thus, notwithstanding any allegations of prejudice, bias, corruption, or other bad faith, Aldrich is not entitled to relief in the form of monetary damages.

Aldrich does not dispute that absolute judicial immunity bars his claim for monetary damages, and he states that he consents to dismissal of such claim.

2.   <u>Claim for Injunctive Relief</u>

Next, with respect to Aldrich's request for injunctive relief, Henderson asserted that there is no legal authority to

allow injunctive relief against federal judges, and to do so would, in essence, permit a "horizontal appeal" from one district judge to another.  Further, under the Federal Courts Improvement Act of 1996, Pub. L. 104-317, Title III, § 309(c)("FCIA"), which amended 42 U.S.C. § 1983, injunctive relief is precluded against a judicial officer "for an act or omission taken in such officer's judicial capacity...unless a declaratory decree was violated or declaratory relief was unavailable."  *Id.*

Aldrich does not dispute that his claim for injunctive relief is barred, and he also consents to dismissal of such claim.

### 3. <u>Claim for Declaratory Relief</u>

With respect to Aldrich's request for declaratory relief, defense counsel contends that, as with injunctive relief, Aldrich may not obtain declaratory relief from another district judge, for three reasons.

First, defense counsel argues that Aldrich had adequate remedies at law, *i.e.*, he could have pursued an appeal or sought an extraordinary writ, rather than seeking a declaration from another judge at this time.[18]

Second, Henderson argues declaratory relief is not warranted because Aldrich seeks declaratory relief only as to <u>past</u> acts.

---

[18]As previously noted, Aldrich has pending an appeal of his third civil action, 09-11282-WGY.

He argues, and cites case law in support, that the purpose of declaratory relief is to determine the rights of parties with respect to <u>future</u> events, not to declare liability for past wrongs.

Third, courts have broad discretion to decline to enter a declaratory judgment, and defense counsel contends I should use that discretion and decline to do so here.  *See DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997).

### 4.   The Court's Rulings

As noted above, with respect to his claims for both monetary damages and injunctive relief, Aldrich concedes he fails to state any claims upon which such relief can be granted, and he consents to the dismissal of those claims.  Nevertheless, he asserts he is entitled to pursue his claim for declaratory relief.

As an initial matter, notwithstanding Aldrich's concessions and assent to dismissal of some claims, I will not dismiss those claims on that basis; rather, I will make independent findings on the merits.  In this regard, I agree with the defendant's arguments set forth in the Memorandum in Support, that, in the circumstances here, absolute judicial immunity bars Aldrich's claims for monetary damages.[19]  Most recently, the United States

---

[19]*See Pierson v. Ray*, 386 U.S. 547, 553-554 (1967)(absolute judicial immunity protects integrity of judicial process); *Allard v. Estes*, 197 N.E. 884, 886 (1935)(stating that is it "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction

Court of Appeals for the First Circuit addressed the scope of absolute judicial immunity. *See Goldstein v. Galvin*, 2013 WL 2466861 (1st Cir. June 10, 2013). In *Goldstein*, the Court stated:

> Absolute immunity applies to a narrow swath of public officials, including "judges performing judicial acts within their jurisdiction," "prosecutors performing acts intimately associated with the judicial phase of the criminal process," and agency officials with functions similar to judges and/or prosecutors. *Bettencourt v. Bd. of Regist. in Med. of Mass.*, 904 F.2d 772, 782 (1st Cir.1990) (internal quotation marks omitted); *see Butz v. Economou*, 438 U.S. 478, 508–17, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The protection afforded by an absolute immunity endures even if the official "acted maliciously and corruptly" in exercising his judicial or prosecutorial functions. *Wang*, 55 F.3d at 702 (internal quotation marks omitted). It likewise endures "in the presence of 'grave procedural errors.' " *Nystedt v. Nigro*, 700 F.3d

---

vested in him by law.").

> The reason for recognizing this form of immunity is that: [T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have.... [T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication.

*Gallas v. Supreme Court of Pennsylvania*, 211 F.3d 760, 768 (3d Cir. 2000)(quoting *Forrester v. White*, 484 U.S. 219, 226–27 (1988)).

25, 32 (1st Cir.2012) (quoting *Stump v. Sparkman*, 435
U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)).
The imperviousness of this protection is no accident:
"[a]lthough this concept of absolute immunity allows
some abuses of official power to go unredressed, it is
necessary for the effective administration of
government that government workers be able to perform
their jobs without fear of liability." *Ricci v. Key
Bancshares of Me., Inc.*, 768 F.2d 456, 462 (1st Cir.
1985).

*Id.* at *4.  Further, *Goldstein* stated:

An inquiry into the existence vel non of judicial
immunity encompasses three questions. First, we ask
whether the defendant carries out traditional
adjudicatory functions. *See Bettencourt*, 904 F.2d at
783. If so, we ask whether the defendant is called upon
to decide cases that are "sufficiently controversial
that, in the absence of absolute immunity, he would be
subject to numerous damages actions." *Id.* If the
answers to these two queries are affirmative, we then
ask whether the defendant performs his adjudicatory
functions "against a backdrop of multiple safeguards
designed to protect [the plaintiff's] constitutional
rights." *Id.*....Judicial acts are those that are
'intimately associated' with the judicial function."
*Nystedt*, 700 F.3d at 31 (quoting *Burns*, 500 U.S. at
486). The bedrock judicial function is, of course, the
adjudication of disputes. *Id.* Other traditional
judicial functions include such things as "weighing
evidence, making factual findings, reaching legal
determinations, choosing sanctions, and expounding
reasons for [ ] decisions." *Coggeshall*, 604 F.3d at
663.

*Id.* at *5.

Here, all of the wrongful acts complained of were all taken

by Judge Young in his judicial capacity and were acts normally

performed by a judge within the scope of his jurisdiction.  Thus,

notwithstanding any allegations of malice, prejudice, bias

against *pro se* litigants, negligence or other bad faith acts in

connection with Judge Young's rulings, I find that he is immune from suit.

Next, with respect to Aldrich's claim for injunctive relief, I find the claim is barred because this case does not involve a situation where a declaratory decree was violated or declaratory relief was unavailable.

Finally, with respect to the remaining claim for declaratory relief, I reject Aldrich's argument that once a request for a declaratory judgment is presented, there must be declaration one way or the other, even if declaratory relief ultimately is denied on the merits.

"The plain language of the FCIA indicates that declaratory relief is available against judicial officers under § 1983." *Crotty v. Massachusetts Parole Bd.*, 2012 WL 3628904 (D. Mass. 2012) *citing Nollet v. Justices of the Trial Ct. of Com. of Mass.*, 83 F. Supp. 2d 204, 209-210 (D. Mass. 2000). Because § 1983 is a method for vindicating rights rather than a source of substantive rights itself, the remaining action for declaratory judgment brought under § 1983 must identify the specific constitutional or federal statutory right infringed. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994).[20] *See also*

---

[20]Declaratory Judgment is not a separate not a substantive source of rights; rather, the "operation of Declaratory Judgment Act is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)(citation omitted); *see Akins v. Penobscot Nation*, 130 F.3d 482, 490 n. 9 (1st Cir. 1997) (Declaratory Judgment Act does not, by itself, create a substantive cause of action).

*Phillips v. Conrad*, 2011 WL 309677, *8 (D. Mass. 2011).

Even presuming that Aldrich raises constitutional due process or equal protection claims in support of his request for declaratory relief, in the exercise of my discretion, I will <u>GRANT</u> the defendant's Motion to Dismiss the remaining claim for declaratory relief.  I do not find that any further development of the record is needed; rather, the the issue may be resolved on the record presently before me, as there simply are no circumstances in which declaratory relief would be warranted. Again, I reject Aldrich's legally unsupported contention that I am obligated to make a declaration one way or the other, even if the declaration is adverse to him.

First, Aldrich fails to present valid due process claims in light of the fact that he neglected to, or chose not to, pursue the legal process that was available to him to challenge Judge Young's judicial rulings in his first and second suits.  The same is true with respect to any equal protection claim.  Given his apparent ability to research law and present arguments (both in this litigation and in prior lawsuits), there is no basis from which I reasonably could infer that Aldrich was in any way hindered from pursuing those avenues of relief.  Moreover, to the extent that Aldrich currently has an appeal pending, those issues might be raised in that context, and to the extent they were not, he has forfeited his right to pursue those claims in a civil

action.   In any event, for purposes of determining whether declaratory relief is warranted, there is no basis to have both the First Circuit and this court reviewing the case.

Second, I find no equitable basis for the grant of declaratory relief where Aldrich does not seek prospective relief, but seeks only a declaration as to alleged <u>past</u> wrongdoings.   *See Clay v. Osteen*, 2010 WL 4116882 (M.D.N.C. 2010).[21]   Declaratory relief applies only to prospective relief, to define legal rights in connection with <u>future</u> conduct.   *Id.* *See Willner v. Frey*, 421 F. Supp. 2d 913 (E.D. Va. 2006), *aff'd* 243 Fed. Appx. 744 (4th Cir. 2007), *cert. denied* 128 S.Ct. 1125

---

[21]In rejecting a request for declaratory relief against a judge, *Clay* stated:

> Although Section 1983, as amended in 1996 by the FCIA, does not immunize judges against civil actions for declaratory relief, Plaintiffs are not seeking declaratory relief in the true legal sense. Plaintiffs seek a declaration that Judge Osteen's dismissal of their claim against the IRS was not a judicial act because it denied Plaintiffs their right to a jury trial. "Declaratory judgments, however, are meant to define the legal rights and obligations of the parties in anticipation of some future conduct." *Johnson v. McCuskey*, 72 Fed. Appx. 475, 477 (7th Cir. 2003) (holding that declaratory relief was improper where Plaintiff merely sought a declaration that Defendants had acted improperly when deciding a change of venue motion). They are not "meant simply to proclaim that one party is liable to another." *Id.* at 478. Plaintiffs' request for declaratory relief merely seeks to strip Defendants of judicial immunity and thereby impose liability.  As such, Plaintiffs are not entitled to declaratory relief.

*Clay*, 2010 WL 4116882 at *4.   Such is the case here.

(2008); *Abebe v. Seymour*, 2012 WL 1130667 (D.S.C. 2012), *aff'd* 479 Fed. Appx. 464, *2 (4th Cir. 2012)(denying injunctive relief based on alleged wrongs occurring in prior cases before a judge, stating: "[a] declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." quoting *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008)).  In other words, "[d]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation, and are untimely if the questionable conduct has already occurred or damages have already accrued.".  *Id.* Here, again, Aldrich is not seeking any specific prospective declaratory relief -- he simply asks for a declaration that the alleged acts and omissions contained the complaint violated his rights under the Constitution and laws of the United States and Massachusetts.

Perhaps most importantly, I agree with the defendant that I have wide discretion whether to grant declaratory relief or not. In *DeNovellis*, the United States Court of Appeals for the First Circuit stated, in relevant part:

> The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant"; courts have broad discretion to decline to enter a declaratory judgment. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 2142-43, 132 L.Ed.2d 214 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it

27

> created an opportunity, rather than a duty, to grant a
> new form of relief to qualifying litigants. Consistent
> with the nonobligatory nature of the remedy, a district
> court is authorized, in the sound exercise of its
> discretion, ... to dismiss an action seeking a
> declaratory judgment before trial." *Wilton*, 515 U.S.
> at 288, 115 S.Ct. at 2143....In the declaratory
> judgment context, the normal principle that federal
> courts should adjudicate claims within their
> jurisdiction yields to considerations of practicality
> and wise judicial administration." *Wilton*, 515 U.S. at
> 288, 115 S.Ct. at 2143.

*DeNovellis*, 124 F.3d at 313.

Utilizing my broad discretion, I find declaratory relief is

not appropriate in this case for all the reasons discussed above.

As an additional matter, it appears that Aldrich's attempt to

obtain declaratory relief may be, at least in part, to serve as a

basis for him to seek vacation of the rulings of Judge Young.[22]

If that is so, the policy behind the finality of judgments would

be circumvented in that event, to the prejudice of the parties

involved in the prior civil suits, where those parties have no

opportunity to weigh in on the propriety of granting declaratory

relief against Judge Young.  Because this motivation is

speculative, however, I do not factor this into my determination

as to whether declaratory relief is warranted.

In sum, because Aldrich has not stated any claims for which

monetary, injunctive, or declaratory relief can be granted, I

will <u>GRANT</u> the defendant's Motion to Dismiss all claims for

---

[22]Indeed, I cannot discern any other basis for the request
for declaratory relief against Judge Young apart from a desire to
be vindicated.

relief, including all of his claims raised under both federal and
state law, and this case will be <u>DISMISSED</u> in its entirety.   For
purposes of 28 U.S.C.§ 1915(g), I intend this ruling to
constitute a decision on the merits.

   E.   <u>Request for Referral of Complaint to Commission on
        Judicial Misconduct</u>

   In light of the above, I <u>DECLINE</u> to refer Aldrich's
complaint to the Commission on Judicial Misconduct as he
requests.   Further, I find that Aldrich has not shown good cause
to grant such relief.   A complaint for judicial misconduct is <u>not</u>
the proper vehicle for challenging a judge's rulings.   *See
Judicial Conference of the United States Committee on Judicial
Conduct and Disability* (document 3.2010, explaining the legally
prescribed process under the Judicial Conduct and Disability Act
of 1980, 28 U.S.C. §§ 351-364 and under the Rules for Judicial-
Conduct and Judicial Disability Proceedings, 248 F.R.D. 674
(2008), for complaining that a federal judge has committed
misconduct or become disabled).   A judicial misconduct complaint
relating to a judicial decision that is unfavorable or alleged to
be wrong must be dismissed, as such conduct does not in itself
establish misconduct or disability.   Challenges to the
correctness of a judge's decision must be made in court under the
proper procedural rules.   *Id.* at 2.[23]

---

[23]This document is available on the First Circuit's website,
<u>www.ca1.uscourts.gov/forms-instructions.</u>   This ruling does not
prohibit Aldrich from filing a judicial misconduct complaint;
rather, it simply denies Aldrich's request for me to refer the

F. <u>Plaintiff's Motion Requesting to be Provided with
Written Notice of All Electronic Filings as a Non ECF
User</u>

Aldrich seeks an Order to make the clerk responsible for
notifying him of any electronic filing, since he has no PACER
access.  Such an Order would unnecessarily burden the clerk
insofar as paper versions of any rulings of the Court are sent to
non-participating litigants.  Further, this would eradicate the
responsibility of a defendant to comply with the Federal Rules of
Civil Procedure regarding service of pleadings.  More
importantly, however, in view of the dismissal of this action,
Aldrich's motion is rendered moot, as it is not anticipated that
additional filings would be made by the defendant in this case.
Accordingly, Aldrich's Motion Requesting to be Provided with
Written Notice of All Electronic Filings as a Non ECF User
(Docket No. 22) will be <u>DENIED</u>.

G. <u>Certification That Any Appeal Would Not Taken in Good
Faith</u>

In the Motion to Dismiss, defense counsel asks that
Aldrich's Motion for Leave to Amend the Complaint be denied, and
that I certify that any appeal of adverse rulings in this action
would not be taken in good faith.  I have previously addressed
the Motion for Leave to Amend the Complaint herein, and thus turn
to the question of certification.

Aldrich contends that the defendant's request for me to

---

complaint to the Commission on Judicial Misconduct.

certify that any appeal of the dismissal of this action be
certified as not taken in good faith is beyond the scope of a
Rule 12(b)(6) motion and thus was not presented properly to this
court.  I need not resolve the issue whether the defendant's
motion properly raises the issue because, pursuant to my inherent
authority and in accordance with the rules of district court and
appellate procedure, I will make an independent finding that any
appeal of any of the matters contained in this Memorandum and
Order would not be taken in good faith, pursuant to 28 U.S.C.
§ 1915(a)(3) and Fed. R. App. P. 24(a)(3)(A).  Such a
certification prohibits *in forma status* on appeal even though
Aldrich has been found to be indigent.

Under 28 U.S.C. § 1915(a)(3) "[a]n appeal may not be taken
in forma pauperis if the trial court certifies in writing that it
is not taken in good faith." *Id.*  Similarly, under Fed. R. App.
P. 24(a)(3)(A), a party who has been permitted to proceed *in
forma pauperis* in the district court may proceed on appeal *in
forma pauperis* without further authorization, unless the district
court certifies that the appeal is not taken in good faith.  *Id.*

Because Aldrich has conceded and assented to the dismissal
of his claims seeking monetary damages and injunctive relief, and
because I have found the law to be clear in this regard,
Aldrich's appeal of the dismissal of those two claims clearly
would not be taken in good faith.

Further, with respect to Aldrich's claim for declaratory

relief, I also find, for the reasons stated herein, that any appeal of the denial of declaratory relief based on my wide discretion, would not be taken in good faith.  "The applicant's good faith is established by the presentation of any issue that is not plainly frivolous." *Ellis v. United States*, 356 U.S. 674, 674 (1958)(*per curiam*); *see Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000); *Wooten v. District of Columbia*, 129 F.3d 206, 208 (D.C. Cir. 1997).  A complaint is "frivolous" if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Such is the case here.  I find that any appeal would be one that plainly does not deserve additional judicial attention.

Accordingly, I will <u>CERTIFY</u> that any appeal of the rulings contained in this Memorandum and Order would not be taken in good faith.

Should Aldrich seek *in forma pauperis* status on an appeal, he must obtain permission to do so directly from the First Circuit Court of Appeals.

## III. Conclusion

Based on the foregoing it is here by ORDERED:

1.    Plaintiff's Motion to Amend Complaint (Docket No. 9) is <u>DENIED</u>;

2.    Plaintiff's Motion to Disqualify and Discharge Assistant U.S. Attorney From Representing Defendant (Docket No. 10) is <u>DENIED</u>;

3.    Plaintiff's Motion for Disqualification of the DOJ (Docket No. 17) is <u>DENIED</u>;

4.   Plaintiff's Motion for Hearing on the Motion for
     Disqualification (Docket No. 18) is <u>DENIED</u>; and

5.   Plaintiff's Motion to Stay Proceedings Pending Final
     Disposition on Whether or Not the DOJ is Disqualified From
     Representing Defendant (Docket No. 19) is <u>DENIED</u>;

6.   Plaintiff's Motion to Strike Motion to Dismiss for Failure
     to Comply With Rules of Civil Procedure (Docket No. 11) is
     <u>DENIED</u>;

7.   Plaintiff's request for a referral of his complaint to the
     Commission on Judicial Misconduct is <u>DENIED</u>;

8.   Plaintiff's Motion Requesting to be Provided with Written
     Notice of All Electronic Filings as a Non ECF User (Docket
     No. 22) is <u>DENIED</u>;

9.   Defendant's Motion to Dismiss (Docket No. 4) is <u>ALLOWED</u> as
     to all claims;

10.  This action is <u>DISMISSED</u>; and

11.  This Court hereby <u>CERTIFIES</u> that any appeal by the plaintiff
     of any of the rulings contained in this Memorandum and Order
     would not be taken in good faith.


SO ORDERED.


                              <u>/s/ Douglas P. Woodlock</u>
                              DOUGLAS P. WOODLOCK
                              UNITED STATES DISTRICT JUDGE